1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                            SOUTHERN DISTRICT OF CALIFORNIA

9

10    SELVIN O. CARRANZA,                      Case No.:  3:14-cv-00773-GPC-AGS
      CDCR #T-67780,
11                                             **ORDER:**
                                   Plaintiff,
12                                             **1)  GRANTING MOTION TO
              vs.                              EXCEED PAGE LIMITS
13                                             [ECF No. 33]**

14    EDMUND G. BROWN, Jr., Governor,          **2)   DISMISSING SELECTED
      et al.,                                  DEFENDANTS PURSUANT TO 28
15                                             U.S.C. § 1915(e)(2) and § 1915A(b)**
                                   Defendants.
16                                             **3)  DENYING MOTION FOR
                                               URGENT PRELIMINARY
17                                             INJUNCTION [ECF No. 29]**

18                                             **4)  DIRECTING U.S. MARSHAL TO
                                               EFFECT SERVICE UPON
19                                             REMAINING DEFENDANTS
                                               PURSUANT TO 28 U.S.C. § 1915(d)
20                                             AND Fed. R. Civ. P. 4(c)(3)**

21

22

23

24

25

26    **I.      Procedural History**

27           SELVIN O. CARRANZA ("Plaintiff"), currently incarcerated at Pleasant Valley

28    State Prison ("PVSP") and proceeding pro se, first initiated this civil rights action in

1    March 2014, by filing a letter with the Clerk of Court containing allegations that

2    unidentified correctional officials at Richard J. Donovan Correctional

3    Facility ("RJD") staged a "gladiator-style fight" between him and another inmate on June

4    22, 2012, while he was incarcerated there. (*See* ECF No. 1 at 1.)

5           The Court has since granted Plaintiff leave to proceed in forma pauperis ("IFP")

6    (ECF No. 14), denied his multiple requests for injunctive relief (ECF Nos. 16, 20, 22,

7    27), and has granted him *six* separate extensions of time in which to file a Second

8    Amended Complaint ("SAC"). (ECF Nos. 4, 6, 9, 14, 15, 27.) On August 17, 2016, the

9    Court granted Plaintiff one "<u>final</u>" opportunity to amend, provided him with another copy

10   of its form civil rights complaint, directed that he file it within 45 days, or by

11   approximately October 3, 2016, and ordered him not to attach more than fifteen

12   additional pages pursuant S.D. CAL. CIVLR 8.2.a. (ECF No. 27 at 6, 9.) Plaintiff was

13   advised that should he fail to comply with the Court's Order, it would dismiss his case.

14   (*Id.* at 9.)

15          In response, before the Court entered a final Order of dismissal, and more than a

16   month *after* the time for compliance elapsed, Plaintiff filed another "Motion for Urgent

17   Preliminary Injunction" (ECF No. 29), followed by a "Motion for Leave to Exceed Page

18   Limits," attached to which is his proposed Second Amended Complaint (ECF No. 33).

19   Plaintiff has since submitted several additional documents supplementing his latest

20   Motion for Injunctive Relief, including an ex parte request to schedule a status

21   conference related to his most recent request for injunctive relief. (ECF Nos. 31, 35, 38,

22   40).

23   **II.     Motion to Exceed Page Limitations**

24          The Court has previously ordered Plaintiff to amend in compliance with FED. R.

25   CIV. P. 8(a)(2) and S.D. CAL. CIVLR 8.2.a which requires that complaints filed by

26   prisoners pursuant to 42 U.S.C. § 1983 be legibly written on forms supplied by the Court,

27   contain a short and plain statement of the claim, and not include more than 15 additional

28   pages. *See* ECF No. 27 at 8-9 & n.2 (citing cases).

1   Plaintiff has now submitted a 71-page SAC (ECF No. 33 at 4-75), which is

2   untimely, and is comprised of more than 420 separately numbered paragraphs alleging

3   multiple causes of action arising between June 2012 and May 2013 against more than 50

4   named and unnamed California Department of Corrections and Rehabilitation ("CDCR")

5   administrative officials, California Peace Officers' Association ("CCPOA") members,

6   CDCR appeals officials, RJD correctional officials, and RJD medical personnel. (*Id.* at 4-

7   20.) Plaintiff seeks leave to exceed the Court's page limitations because he "is not a

8   professional writer" and has "never filed a civil action," but he "had to name 55

9   defendants," had to "show what each Defendant did," and has tried not to be

10  "argumentative," "redundant" or "prolix." (*See* ECF No. 33 at 1-2.)

11   Although the Court must construe his pleadings liberally, "[p]ro se litigants must

12  follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d

13  565, 567 (9th Cir. 1987); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per

14  curiam); *Carter v. Comm'r*, 784 F.2d 1006, 1008 (9th Cir. 1986). On the other hand,

15  "'strict time limits . . . ought not to be insisted upon' where restraints resulting from a pro

16  se prisoner plaintiff's incarceration prevent timely compliance with court deadlines."

17  *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987) (citing *Tarantino v. Eggers*, 380

18  F.2d 465, 468 (9th Cir. 1967)); *see also McGuckin v. Smith*, 974 F.2d 1050, 1058 (9th

19  Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th

20  Cir. 1997); *Bennett v. King*, 205 F.3d 1188, 1189 (9th Cir. 2000) (district court erred in

21  not extending pro se prisoner's time for filing an amended complaint [which court held

22  prisoner had the "right" to file under *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)] when

23  prisoner's failure to meet 30-day leave-to-amend deadline was result of alleged lockdown

24  and confiscation of prisoner's legal materials and where amended complaint was

25  submitted within 30 days of original deadline).

26   Here, the Court has, and will continue to construe Plaintiff's pleadings liberally in

27  light of his pro se status and his transfers between several prisons since he first initiated

28  this case. *See, e.g.,* ECF No. 27 at 1-2, n. 1. Accordingly, the Court GRANTS Plaintiff's

3:14-cv-00773-GPC-AGS

1  Motion to Exceed Page Limitations (ECF No. 33 at 1-3), and will further excuse his

2  failure to file his SAC (ECF No. 33 at 4-77) within the forty-five days provided by its

3  August 17, 2016. Plaintiff's SAC, currently attached to his Motion to Exceed Page Limits

4  (ECF No. 33 at 4-77) is hereby deemed filed nunc pro tunc to October 28, 2016, and shall

5  hereafter be considered the operative pleading in this case. *See Rhodes v. Robinson*, 621

6  F.3d 1002, 1005 (9th Cir. 2010) ("The amended complaint supersedes the original, the

7  latter being treated thereafter as non-existent.") (citing *Loux v. Rhay*, 375 F.2d 55, 57 (9th

8  Cir. 1967)).

9  **III.    Screening of Second Amended Complaint**

10  As Plaintiff knows, the Prison Litigation Reform Act ("PLRA") required the Court

11  review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who

12  are "incarcerated or detained in any facility [and] accused of, sentenced for, or

13  adjudicated delinquent for, violations of criminal law or the terms or conditions of parole,

14  probation, pretrial release, or diversionary program," at the time of filing "as soon as

15  practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under the

16  PLRA, the Court must sua sponte dismiss complaints, or any portions thereof, which are

17  frivolous, malicious, fail to state a claim, or which seek damages from defendants who

18  are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122,

19  1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes*, 621 F.3d at 1004 (discussing

20  28 U.S.C. § 1915A(b)).

21  **A.    Standard of Review**

22  "The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious

23  suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920

24  n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681

25  (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a

26  claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the

27  Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v.*

28  *Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113,

1    1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the

2    familiar standard applied in the context of failure to state a claim under Federal Rule of

3    Civil Procedure 12(b)(6)").

4         Every complaint must contain "a short and plain statement of the claim showing

5    that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations

6    are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported

7    by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678

8    (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there

9    are well-pleaded factual allegations, a court should assume their veracity, and then

10   determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

11   "Determining whether a complaint states a plausible claim for relief [is] . . . a context-

12   specific task that requires the reviewing court to draw on its judicial experience and

13   common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this

14   plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th

15   Cir. 2009).

16        While a plaintiff's factual allegations are taken as true, courts "are not required to

17   indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th

18   Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an

19   obligation where the petitioner is pro se, particularly in civil rights cases, to construe the

20   pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*,

21   627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1

22   (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially

23   pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir.

24   1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in

25   civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

26   **B.    Plaintiff's Allegations**

27        As noted above, Plaintiff's Second Amended Complaint (ECF No. 33 at 4-77)

28   names more than 50 prison officials as Defendants. (*Id.* at 4-20.) Some are named as

1  individuals; others are unnamed groups. He does, however, divide his pleading into five

2  separate counts which allege several identifiable causes of action.

3        In Count One, Plaintiff claims that on June 22, 2012, RJD officials L. Tillman, S.

4  Rink, K. Thaxton, E. Pimentel, N. Scharr, J. Rodriguez, J. Reyes, E. Garcia, L. Brown,

5  and W. Suglich conspired and set him up to fight another inmate "gladiator style" and

6  then used excessive force by shooting him in order to break up the fight in violation of

7  the Eighth Amendment. (*Id.* at 21, 30-38, ¶¶ 1-72.)

8        In Count Two, Plaintiff claims that on August 10, 2012, Defendant Tillman

9  assaulted him "in retaliation" for his having complained about the June 22, 2012 incident,

10  and Defendant R. Lemon failed to intervene. (*Id*. at 21, 38-43, ¶¶ 73-127.)

11        In Count Three, Plaintiff claims RJD officials Tillman, Rink, A. Buenrostro, R.

12  Lopez, R. Davis, L. Vanderweide, W. Shimko, I. Marquez, R. Lacosta, L. Romero, and

13  other "unknown defendants" conspired to "beat," "mutilate," and attempted to "murder

14  him by strangulation" while he was in handcuffs, and that others failed to intervene or

15  provide him medical attention on August 15, 2012—again in violation of the Eighth

16  Amendment and in retaliation for his previous complaints against staff. (*Id.* at 23, 43-55

17  ¶¶ 128-245.) He further claims Defendants R. Casper, N. Molina, and RN Sanchez

18  laughed, taunted him, and failed to intervene during the incident, (*id.* at 51 ¶¶ 219-222),

19  Defendants Vanderweide, Davis, Shimko, Rink, Buenrostro, and C. Hernandez kept him

20  handcuffed for 10 hours afterward, refused to provide him medical attention, and

21  conducted a "biased" investigation that ultimately resulted in disciplinary proceedings

22  before Defendants E. Garcia, A. Hernandez, and Lt. R. Davis for which he was found

23  guilty of battery on a peace officer, referred for criminal prosecution, and sentenced to a

24  SHU term which he claims violated due process. (*Id.* at 53-57 ¶¶ 235-266.)

25        In Count Four, Plaintiff claims RJD officials G. Savala, G. Stratton, J. Gomez, R.

26  Davis, R. Lopez, Ojeda, C. Franco, Morales, Jackson, D. Arguillez, M. Stout, J. Brown,

27  C. Meza, and G. Hernandez falsely accused him of exposing himself to a female officer

28  on November 24, 2012, placed him in segregation, and charged and found him guilty of a

3:14-cv-00773-GPC-AGS

1    "sex offense" in violation of due process, in order to damage his reputation, justify the

2    cancellation of an internal "FBI investigation," and to further retaliate against him for his

3    "continuous" complaints and the exhaustion of his administrative remedies. (*Id.* at 24, 61-

4    68, ¶¶ 295-366.)

5         In Count Five, Plaintiff claims RJD officials D. Arguillez, R. Davis, A, Buenrostro,

6    A. Silva, R. Lopez, R. Demesas, "and other unknown C/Os," used excessive force against

7    him again on April 18, 2013, while escorting him from his cell and in preparation for his

8    transfer to Kern Valley State Prison. Plaintiff claims Defendants Lopez and Silva also

9    failed to properly decontaminate him after he had been pepper sprayed, and RN Sanchez

10   failed to attend to his injured wrist afterward—again all in "retaliation for [him]

11   continuously complaining verbally and by filing 602[] staff complaints about correctional

12   officers." (*Id.* at 25, 68-71 ¶¶ 367-404.)

13        **C.     KVSP Defendants**

14        As an initial matter, the Court notes Plaintiff's SAC no longer names Kern Valley

15   State Prison ("KVSP") officials M.D. Biter, K. Hixon, J. Johns, N. Montanez, J. Custer,

16   S.M. Buck, R. Davidson, Medrano, or "All Other Unknown Defendants, CCPOA

17   Representatives/Correctional Officer Bystander at KVSP," as parties, and his SAC fails

18   to include any allegations of constitutional wrongdoing occurring at KVSP by any KVSP

19   officials. Therefore, the Clerk is DIRECTED to terminate these identified and

20   unidentified KVSP officials as parties to this action. *See King v. Atiyeh,* 814 F.2d 565,

21   567 (9th Cir. 1987) (noting that all claims not re-alleged in amended pleading are

22   waived); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] [§ 1983] plaintiff must plead

23   that each Government-official defendant, through the official's own individual actions,

24   has violated the Constitution.").

25        **D.     Supervisorial and all Unknown Defendants**

26        As to the following Defendants included in Plaintiff's SAC:  Edmund G. Brown,

27   the Governor of California; Matthew Cate, the former Secretary of the CDCR; Jeffrey A.

28   Beard, the current Secretary of the CDCR; D. Hoffman, Assistant Secretary of CDCR;

3:14-cv-00773-GPC-AGS

1  Mike Jimenez, President of the CCPOA; John Doe, Vice President for CCPOA; K. Reid,

2  CCPOA Representative and Correctional Captain at RJD; Unknown Defendants, All

3  Policy Makers for CCPOA; Unknown Defendants, Statewide Policy Makers for CDCR;

4  and All Other Unknown Defendants, CCPOA Representatives/Correctional Officers

5  Bystanders at RJ Donovan, the Court finds them subject to sua sponte dismissal pursuant

6  to 28 U.S.C. § 1915(e)(2) and § 1915A(b) because his SAC fails to contain allegations

7  sufficient to state a plausible claim for relief against any of them. *See Iqbal*, 556 U.S. at

8  676.

9  Plaintiff claims broadly throughout his SAC that these Defendants, most identified

10  only by their titles, and others identified only as unknown groups, "hired inadequate staff

11  lacking training," or conspired to either make or enforce unconstitutional policies that

12  "creat[ed] incidents of violence" in order to ensure their "job security and to defraud the

13  State and their unions." *See* ECF No. 33 at 7-8, 21, 34-37, 42, 58, 61, 68, 71-72.

14  First, the Court finds Plaintiff's Complaint fails to state a claim for conspiracy

15  between these parties under section 1983, because it offers only "naked assertions devoid

16  of further factual enhancement," *Iqbal*, 556 U.S. at 678, to show the existence of an

17  agreement or a meeting of the minds to violate his constitutional rights, or any actual

18  deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir.

19  2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001); *see also Jones v. Jimenez*, No.

20  1:14-cv02045 LJO SAB PC, 2015 WL 8538922, at *7 (E.D. Cal. Dec. 11, 2015) (finding

21  prisoner's vague references to "green wall" conspiracy tactics insufficient to state a

22  cognizable conspiracy claim, and therefore, subject to sua sponte dismissal pursuant to 28

23  U.S.C. § 1915(e)(2) and § 1915A).

24  Second, Plaintiff seeks to hold the Governor, and other high-ranking CDCR

25  officials and California peace officer union representatives liable based solely on their

26  positions or memberships within these organizations. However, his SAC contains no

27  further "factual content" describing these Defendants' direct involvement in any

28  constitutional injury he actually alleges to have suffered. *See Iqbal*, 556 U.S. at 678. "All

3:14-cv-00773-GPC-AGS

1 § 1983 claims must be premised on a constitutional violation." *Nurre v. Whitehead*, 580

2 F.3d 1087, 1092 (9th Cir. 2009). To state a claim, Plaintiff must demonstrate that each

3 person he seeks to sue personally participated in the deprivation of his constitutional

4 rights. *Colwell v. Bannister,* 763 F.3d 1060, 1070 (9th Cir. 2014). Liability may *not* be

5 imposed on supervisory personnel for the acts or omissions of their subordinates under

6 the theory of respondeat superior. *Iqbal*, 556 U.S. at 672-673. "In order for a person

7 acting under color of state law to be liable under section 1983 there must be a showing of

8 personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930,

9 934 (9th Cir. 2002); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

10        Thus, to the extent Plaintiff seeks to premise liability upon these Defendants based

11 only on broad and generalized references to their duties to adequately hire and train

12 prison staff, or to refrain from making or enforcing "all their unconstitutional state-wide

13 policies," (ECF No. 33 at 68), his SAC fails to state any plausible claim for relief under

14 § 1983. *Iqbal,* 556 U.S. at 678.

15        **E.        Defendants Paramo, Pool, Lozano, Olson and Taylor**

16        While Plaintiff makes similar generalized claims that RJD Warden Paramo "hired

17 inadequate staff," and made "unconstitutional policies," (ECF No. 33 at 9), he also

18 alleges to have "delivered a letter" to Paramo in November 2012, that "detailed in writing

19 all [his] complaints" regarding the incidents occurring on June 22, 2012 (Count One),

20 August 10, 2012 (Count Two), August 15, 2012 (Count 3), and November 24, 2012

21 (Count 4). (ECF No. 33 at 64 ¶¶ 336-337.) Plaintiff further claims Paramo reviewed his

22 allegations of staff misconduct, "removed Rink from leading the investigation," and in

23 April 2013, "suspended the remainder of [his] SHU terms," based on the August 15, 2012

24 and November 24, 2012 incidents, and then "put [him] up for a special transfer out of

25 RJD." (*Id.* at 65-66, ¶¶ 346-348, 352.) Plaintiff does not provide any further "factual

26 enhancement," however, to show that Warden Paramo's investigation or review of his

27 staff complaints resulted in any independent violation of his constitutional rights. *See*

28 *Iqbal*, 556 U.S. at 678; *Colwell,* 763 F.3d at 1070.

1    As to Defendants K. Pool, J.D. Lozano, R. Olson, and J. Ramirez, all alleged to be

2  Inmate Appeals officials (ECF No. 33 at 10), Plaintiff claims only that they "reviewed

3  [his] 602 staff complaint" regarding his "staged fight and shooting" on June 22, 2012,

4  and the "ongoing  retaliation offenses that followed on August 10, 2012, August 15,

5  2012, and November 24, 2012," and either "refus[ed] to process them," or "failed to

6  address and terminate the … retaliation" via the 602 process. (ECF No. 33 at 10, 66-67

7  ¶ 356.) These allegations also fail to state a plausible claim upon which § 1983 relief may

8  be granted. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*,

9  855 F.2d 639, 640 (9th Cir. 1988); *Greene v. Olvera*, No. 1:16-CV-01605 LJO MJS PC,

10  2017 WL 68138, at *8 (E.D. Cal. Jan. 5, 2017); *Smith v. Calderon*, No. C 99-2036 MJJ

11  PR, 1999 WL 1051947 (N.D. Cal. 1999) (finding that failure to properly process

12  grievances did not violate any constitutional right); *Cage v. Cambra*, No. C 96-2484 FMS

13  1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly

14  process and address grievances does not support constitutional claim); *Murray v.*

15  *Marshall*, No. C 94–0285 EFL, 1994 WL 245967 (N.D. Cal. 1994) (concluding that

16  prisoner's claim that grievance process failed to function properly failed to state a claim

17  under § 1983).

18    Finally, as to Defendant Taylor, Plaintiff mentions him only once, and claims that

19  "in March through April 18, 2013," Taylor "deprived [him] of [an] annual food package

20  sent by [his] family." (ECF No. 33 at 66 ¶ 355.) Plaintiff concludes Taylor did so in order

21  to "retaliate" against him, but he alleges no other facts to suggest Taylor refused the

22  package *because* Plaintiff had engaged in any protected conduct. *See Rhodes v. Robinson,*

23  408 F.3d 559, 567-68 (9th Cir. 2005); *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir.

24  1997). Therefore, Plaintiff has failed to state a plausible claim for relief against

25  Defendant Taylor pursuant to § 1983. *See Iqbal*, 556 U.S. at 678.

26    **F.    Remaining Claims and Defendants**

27    As for all remaining named Defendants, listed in Section V(4), identified by

28  Plaintiff as having personally participated in alleged violations of his First, Eighth, and

1 Fourteenth Amendment rights on June 22, 2012 (Count One), August 10, 2012 (Count

2 Two), August 15, 2012 (Count Three), November 24, 2012 (Count Four), and April 18,

3 2013 (Count Five), the Court finds Plaintiff's SAC sufficient to surpass the "low

4 threshold" to survive the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and

5 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *Iqbal*, 556 U.S.

6 at 678; *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (holding that when prison officials

7 stand accused of using excessive force in violation of the Eighth Amendment, the core

8 judicial inquiry is "... whether force was applied in a good-faith effort to maintain or

9 restore discipline, or maliciously and sadistically to cause harm."); *Estelle v. Gamble*, 429

10 U.S. 97, 105-06 (1976) (prison officials are liable if they act with deliberate indifferent to

11 a prisoner's serious medical needs); *id.* at 104 (deliberate indifference "is manifested by

12 prison [officials] intentionally denying or delaying access to medical care."); *Rhodes,* 408

13 F.3d at 567-68 (First Amendment retaliation claim requires prisoner to allege: "(1) ... a

14 state actor took some adverse action against [him] (2) because of (3) that prisoner's

15 protected conduct, and that such action (4) chilled the inmate's exercise of his First

16 Amendment rights, and (5) the action did not reasonably advance a legitimate

17 correctional goal.").

18       Therefore, the Court will order the U.S. Marshal to serve the remaining Defendants

19 on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and

20 serve all process, and perform all duties in [IFP] cases."); FED. R. CIV. P. 4(c)(3) ("[T]he

21 court may order that service be made by a United States marshal or deputy marshal ... if

22 the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

23 **IV.**    **Motion for Urgent Preliminary Injunction**

24       As noted above, together with his SAC, Plaintiff has filed another Motion seeking

25 immediate and preliminary injunctive relief (ECF No. 29), followed by several

26 subsequent supplemental pleading in support (ECF Nos. 31, 35, 38), and an ex parte

27 request to schedule a status conference related to his Motion (ECF No. 40).

28       When Plaintiff filed his latest Motion, he was housed at California State Prison in

1  Lancaster ("CSP-LAC") (ECF No. 29); he has since been transferred to HDSP (ECF No.

2  38). Plaintiff asks this Court to "order the Secretary for CDCR to permanently house

3  [him] at [CSP-LAC]." (*Id.* at 1.) Plaintiff claims he has been transferred seven times over

4  the course of the last 3 ½ years, and that prison officials at each of these facilities have

5  transferred him "in mere retaliation as a result of [this] civil action." (*Id.* at 1-3; ECF No.

6  31 at 1-4.) Plaintiff requests permanent placement at CSP-LAC because HDSP is "about

7  a 15-20 hour bus ride" and is "extremely far from [his] family/mother in Long Beach,

8  Palos Verdes." (ECF No. 31 at 2.)

9      Procedurally, however, a federal district court may issue emergency injunctive

10  relief only if it has personal jurisdiction over the parties and subject matter jurisdiction

11  over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344,

12  350 (1999) (noting that one "becomes a party officially, and is required to take action in

13  that capacity, only upon service of summons or other authority-asserting measure stating

14  the time within which the party served must appear to defend."). The court may not

15  attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke

16  Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th

17  Cir. 1983); *Lathrop v. Unidentified, Wrecked & Abandoned Vessel*, 817 F. Supp. 953,

18  961 (M.D. Fl. 1993); *Kandlbinder v. Reagan*, 713 F. Supp. 337, 339 (W.D. Mo. 1989);

19  *Suster v. Marshall*, 952 F. Supp. 693, 701 (N.D. Ohio 1996); *see also Califano v.

20  Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give

21  only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure

22  65(d)(2) an injunction binds only "the parties to the action," their "officers, agents,

23  servants, employees, and attorneys," and "other persons who are in active concert or

24  participation." FED. R. CIV. P. 65(d)(2)(A)-(C).

25      Substantively, "'[a] plaintiff seeking a preliminary injunction must establish that he

26  is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

27  absence of preliminary relief, that the balance of equities tips in his favor, and that an

28  injunction is in the public interest." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736-

1   37 (2015) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20

2   (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just

3   possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v.*

4   *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

5      Finally, the PLRA further requires prisoners to satisfy additional requirements

6   when seeking preliminary injunctive relief against prison officials:

> 7   Preliminary injunctive relief must be narrowly drawn, extend no further than
> 8   necessary to correct the harm the court finds requires preliminary relief, and
>    be the least intrusive means necessary to correct that harm. The court shall
> 9   give substantial weight to any adverse impact on public safety or the operation
> 10   of a criminal justice system caused by the preliminary relief and shall respect
>    the principles of comity set out in paragraph (1)(B) in tailoring any
> 11   preliminary relief.

12   18 U.S.C. § 3626(a)(2). Section 3626(a)(2) places significant limits upon a court's power

13   to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict

14   the equity jurisdiction of federal courts and to protect the bargaining power of prison

15   administrators—no longer may courts grant or approve relief that binds prison

16   administrators to do more than the constitutional minimum." *Gilmore v. People of the*

17   *State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

18      First, because Plaintiff's case is still in its preliminary screening stage, the United

19   States Marshal has yet to effect service on his behalf, Defendants have no actual notice,

20   and the Court has no personal jurisdiction over any Defendant at this time. *See* FED. R.

21   CIV. P. 65(d)(2); *Murphy Bros., Inc*., 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28. In

22   fact, the Court has found Plaintiff's SAC fails to state a claim against the Secretary of the

23   CDCR—the person Plaintiff requests this Court enjoin.

24      Second, "[t]he fact that plaintiff has met the pleading requirements allowing him to

25   proceed with the complaint does not, ipso facto, entitle him to a preliminary injunction."

26   *Claiborne v. Blauser*, No. CIV S-10-2427 LKK, 2011 WL 3875892, at *8 (E.D. Cal.

27   Aug. 31, 2011), *report and recommendation adopted*, No. CIV S-10-2427 LKK, 2011

28   WL 4765000 (E.D. Cal. Sept. 29, 2011). Instead, to meet the "irreparable harm"

3:14-cv-00773-GPC-AGS

1    requirement, Plaintiff must do more than simply *allege* imminent harm; he must

2    demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th

3    Cir. 1988). This requires Plaintiff to demonstrate by specific facts that he faces a credible

4    threat of immediate and irreparable harm, unless an injunction issues. FED. R. CIV. P.

5    65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant

6    granting a preliminary injunction." *Caribbean Marine*, 844 F.2d at 674-75.

7        Here, the Court finds that even if it had personal jurisdiction over the Secretary of

8    CDCR, Plaintiff has failed to establish the imminent irreparable harm required to support

9    a preliminary injunction. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632

10   F.3d at 1131. This is because where immediate injunctive relief is sought based on claims

11   that governmental actors or agencies have violated the law in the *past*, as is the case here,

12   Plaintiff must establish that the threat of future or repeated injury is both "real and

13   immediate," not just "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461

14   U.S. 95, 102 (1983).

15       While it does appear Plaintiff has been transferred to several different prisons

16   within the State of California since he first commenced this action, nothing in his current

17   Motion suggests his transfer from CSP-LAC was "retaliatory." *Cf. Rhodes,* 408 F.3d at

18   568; *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Instead, the exhibits Plaintiff has

19   submitted in support indicate his latest transfer from CSP-LAC to HDSP was cleared by a

20   Classification Committee at CSP-LAC, none of the members of which are named as

21   parties to this case, and based on enemy concerns, the "propensity for violence" arising at

22   CSP-LAC's 'C' Facility, and Plaintiff's need to be housed in a "SNY facility." *See* ECF

23   No. 31 at 8-9 ("ICC elects to retain [Plaintiff] in ASU pending transfer" because "LAC

24   does not have an alternate SNY facility.").

25       Plaintiff does not have a constitutional right to be housed in the institution of his

26   choice. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *McKune v. Lile*, 536 U.S. 24,

27   39 (2002) ("It is well settled that the decision where to house inmates is at the core of

28   prison administrators' expertise."); *Morman v. Dyer*, No. 16-CV-01523-SI, 2016 WL

14

1  5358592, at *5 (N.D. Cal. Sept. 26, 2016). In addition, his current Motion fails to

2  establish, let alone allege, that he faces any "real and immediate" harm at HDSP, or at

3  any other CDCR institution *other* than CSP-LAC—the institution he prefers based on its

4  proximity to his family. (ECF No. 31 at 2; ECF No. 53 at 2; ECF No. 40 at 5).

5        For all these reasons, Plaintiff's Motion for a Preliminary Injunction and his

6  subsequent ex parte request for a status conference related to that Motion (ECF Nos. 29,

7  40) are DENIED. *See Lyons*, 461 U.S. at 102.

8  **V.      Conclusion and Orders**

9        For all the reasons discussed, the Court:

10        1)      **GRANTS** Plaintiff's Motion to Exceed Page Limits [ECF No. 33];

11        2)      **DISMISSES** the following Defendants as parties to this matter based on

12  Plaintiff's failure to state a claim against them in his Second Amended Complaint

13  pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A: Edmund G. Brown, Jr.; Matthew Cate;

14  Jeffrey A. Beard; D. Hoffman; Mike Jimenez; John Doe, Vice President for CCPOA;

15  Unknown Defendants, All Policy Makers for CCPOA; Unknown Defendants, State Wide

16  Policy Makers for CDCR; Daniel Paramo, Warden; M.D. Biter; K. Pool; J.D. Lozano; R.

17  Olson; J. Ramirez; K. Hixon; J. Johns; N. Montanez; J. Custer; All Other Unknown

18  Defendants, CCPOA Representatives/Correctional Officers Bystanders at RJ Donovan;

19  S.M. Buck; R. Davidson; First Name Unknown Medrano; All Other Unknown

20  Defendants, CCPOA Representatives/Correctional Officer Bystanders at KVSP; First

21  Name Unknown Taylor; and K. Reid;

22        3)      **DENIES** Plaintiff's Motion for Urgent Preliminary Injunction, as well as his

23  ex parte request to schedule a status conference related to that Motion [ECF Nos. 29, 40];

24        4)      **DIRECTS** the Clerk to issue a summons as to Plaintiff's Second Amended

25  Complaint (ECF No. 33 at 4-77) and forward it to Plaintiff along with blank U.S. Marshal

26  Form 285s for the remaining Defendants: W. Suglich; G. Stratton; Alan Hernandez; E.

27  Garcia; Michael Stout; G. Hernandez; R. Davis, Correctional Lieutenant; C.P. Franco; S.

28  Rink, G. Savala; Dion Arguillez; L. Tillman; J. Ojeda; L. Brown; J. Brown; A.

3:14-cv-00773-GPC-AGS

1   Buenrostro; R. Demesas; J. Gomez; C. Hernandez; First Name Unknown Jackson; R.

2   Lacosta; R. Lemon; Richard Lopez; Isaac Marquez; C. Meza; First Name Unknown

3   Morales; E. Pimentel; J. Reyes; J. Rodriguez; L. Romero; N. Scharr; W. Shimko; A.

4   Silva; K. Thaxton; J. L. Vanderweide; R. Casper; First Name Unknown Molina; First

5   Name Unknown RN Sanchez; and R. Davis, Correctional Officer. In addition, the Clerk

6   will provide Plaintiff with a certified copy of this Order, a certified copy of his Second

7   Amended Complaint, and the summons so that he may serve these Defendants. Upon

8   receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and

9   accurately as possible, *include an address where each named Defendant may be found*

10  *and/or subject to service*, and return them to the United States Marshal according to the

11  instructions the Clerk provides in the letter accompanying his IFP package;

12       5)    **ORDERS** the U.S. Marshal to serve a copy of Plaintiff's Second Amended

13  Complaint (ECF No. 33 at 4-77) and summons upon Defendants as directed by Plaintiff

14  on the USM Form 285s provided to him. All costs of that service will be advanced by the

15  United States. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3);

16       6)    **ORDERS** Defendants to reply to Plaintiff's Second Amended Complaint

17  within the time provided by the applicable provisions of Federal Rule of Civil Procedure

18  12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to

19  "waive the right to reply to any action brought by a prisoner confined in any jail, prison,

20  or other correctional facility  under section 1983," once the Court has conducted its sua

21  sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made

22  a preliminary determination based on the face on the pleading alone that Plaintiff has a

23  "reasonable opportunity to prevail on the merits," defendant is required to respond); and

24       7)    **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to

25  serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants'

26  counsel, a copy of every further pleading, motion, or other document submitted for the

27  Court's consideration pursuant to FED. R. CIV. P. 5(b). Plaintiff must include with every

28  original document he seeks to file with the Clerk of the Court, a certificate stating the

1  manner in which a true and correct copy of that document has been was served on

2  Defendants or their counsel, and the date of that service. *See* S.D. CAL. CIVLR 5.2. Any

3  document received by the Court which has not been properly filed with the Clerk or

4  which fails to include a Certificate of Service upon Defendants, or their counsel, may be

5  disregarded.

6        **IT IS SO ORDERED**.

7  Dated:  January 24, 2017

8                                         Hon. Gonzalo P. Curiel

9                                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:14-cv-00773-GPC-AGS