UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELVIN O. CARRANZA,<br><br>                              Plaintiff,<br><br>     v.<br><br>EDMUND G. BROWN, JR., et. al.,<br><br>                              Defendants. | CASE NO. 14cv773-JO-AGS<br><br>**ORDER HOLDING ATTORNEY JANINE K. JEFFERY IN CONTEMPT** |

On February 2, 2023, the Court held attorney Janine K. Jeffery in criminal contempt, imposed sanctions of $4,000, and informed her that she would be referred to the California state bar.  In accordance with Federal Rule of Criminal Procedure Rule 42(b), the below recites the facts relevant to the contempt finding and certifies that the undersigned saw and heard the conduct that constitutes contempt of court.

## I. LEGAL STANDARD

A court has authority to hold an individual in criminal contempt for "[m]isbehavior . . . in its presence or so near thereto as to obstruct the administration of justice." *See* 18 U.S.C. § 401.  Misbehavior obstructs the administration of justice when it is willful and "actually obstruct[s] the district judge in the performance of judicial duty." *In re McConnell*, 370 U.S. 230, 234 (1962) (cleaned up); *see also United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980).  Such misbehavior includes the refusal to comply with

1

a court's orders. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975); *see also In re Gustafson*, 650 F.2d 1017, 1020 (9th Cir. 1981) ("Where . . . an attorney disobeys the court's rulings and instructions, he or she commits 'misbehavior' within the meaning of section 401(1)"). "Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness*, 419 U.S. at 458. "This principle is especially applicable to orders issued during trial." *See id.* at 459–60.

Although criminal contempt is generally imposed after notice and prosecution, a court may summarily hold an individual in criminal contempt under the appropriate circumstances. Federal Rule of Criminal Procedure 42(b) provides that "the court . . . may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies." Fed. R. Crim. P. 42(b). There are two prerequisites to summary criminal contempt proceedings under Ninth Circuit law: "(1) the need to dispel an immediate threat to the court; and (2) contempt committed in the court's presence, proof of which does not require reliance on facts extrinsic to the proceedings." *United States v. Glass*, 361 F.3d 580, 586 (9th Cir. 2004). Such proceedings are "reserved for exceptional circumstances, such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." *Harris v. United States*, 382 U.S. 162, 164–65 (1965); *United States v. Flynt,* 756 F.2d 1352, 1363 (9th Cir. 1985) ("the need to overcome obstructions to ongoing proceedings warrants a procedure whereby a trial judge may, in a summary fashion, remedy a breakdown in the orderly operation of the judicial system").

## II. DISCUSSION

Trial in this prisoner § 1983 action was held in the presence of a jury from January 23, 2023, to February 2, 2023. Plaintiff brought claims against over twenty Defendants, alleging various violations of his constitutional rights. The majority of these Defendants were represented by the California Attorney General's Office with the exception of three

Defendants represented by private counsel.   Janine K. Jeffery ("Attorney Jeffery") represented one of these three Defendants, Sergeant LoriAnne Tillman.

*1. Attorney Jeffery's Disruptive Behavior and Disregard of Court Orders Leading Up to the Contemptuous Act*

Throughout trial in this matter, Attorney Jeffery repeatedly disobeyed the Court's orders and disrupted the Court's ability to efficiently manage the proceedings.  The Court saw and heard the conduct set forth below.

On the first day of trial prior to jury *voir dire*, the Court instructed the parties that it would not entertain speaking objections in front of the jury, and that counsel should state a single-word basis for objections such as "Hearsay" or "Foundation," after which the Court would invite further elaboration at a sidebar, if necessary.  *See* Ex. 1, 1/23/2023 Trial Tr. at 7:12–8:10.  After the Court had ruled and moved on to other issues, Attorney Jeffery objected to the Court's ruling limiting the parties to speaking objections in front of the jury.  *See id.* at 14:20–15:10.  The Court overruled the objection, and ordered Attorney Jeffery to submit any objections to the Court's management of the trial in writing.  *See id.*  at 15:11–13.  Attorney Jeffery nonetheless continued to argue with the Court regarding its ruling, despite the Court's multiple attempts to secure Attorney Jeffery's compliance with the Court's orders.  *See id.* at 15:14–17:2.  Even after being instructed to sit down, Attorney Jeffery did not do so and continued to argue.  *See id.*  The Court then stated, "I've been very clear in my instructions.  I expect you to abide by those instructions."  *Id.* at 16:16–17.

On several more occasions throughout trial, Attorney Jeffery disregarded the Court's instructions to cease argument after a ruling had been made.  At the end of the first day of trial, the Court issued instructions to the parties prior to going off of the record.  In doing so, the Court cautioned Attorney Jeffery that her comment during opening statements that Plaintiff, an inmate with undisputed mental health conditions, "likes getting therapy because he likes to talk" was disrespectful, even if not intentioned that way, and told her to "please be careful about that."  *Id.* at 215:12–20.  After the undersigned had gotten up

to leave the bench, Attorney Jeffery demanded to be heard and stated that it was "unfair of [the Court] to make a comment like that, and then leave the bench without me responding." *Id.* at 216:8–9.  The Court invited Attorney Jeffery to submit her objections in writing and, by thanking counsel and proceeding to leave the bench, indicated that the Court was not inviting further argument. *See id.* at 216:11–12.  Attorney Jeffery disregarded the Court's instructions and continued to make argument, raising her voice, and calling after the undersigned as the undersigned left the bench and exited the courtroom. *See id.* at 216:13–17.

At the beginning of the second day of trial, outside the presence of the jury, the Court addressed Attorney Jeffery's disregard of the Court's instructions the prior day.  The Court stated as follows:

> So Counsel, Ms. Jeffery, I do appreciate that you are zealously advocating for your client.  You -- and you should continue to do so.  You should continue to make the record.  You've raised many valid objections with valid legal grounds that I have sustained.  However, when this Court, which has the authority to manage the trial proceedings, when this Court says that argument will not be taken on a specific matter, that the Court has had sufficient argument on a specific matter or that you should submit argument in writing, that is a court order, and I expect you to comply with that court order.
>
> Yesterday you disobeyed the court order, and I want to be clear.  Going forward in the future then when the Court makes an order of that nature, it is something that I expect full compliance with.

Ex. 2, 1/24/2023 Tr. Transcript at 221:1–15.  Attorney Jeffery responded by accusing the Court of treating her disrespectfully and of harboring a bias against Defendants. *See id.* at 221:18–222:13.

Despite the Court's above admonition, Attorney Jeffery continued to flout the Court's instructions.  On the third day of trial, she again continued to make argument despite the Court's clear instruction to wait for sidebar because the jury was being brought in. Ex. 3, 1/25/2023 Tr. Transcript at 477:24–478:23.  When the attorneys came to sidebar,

the Court again warned Attorney Jeffery that she was "disregarding court orders" and explicitly warned that "contempt and sanctions" might be necessary if the behavior continued. *See id.* at 480:7–481:16. Attorney Jeffery again accused the Court of bias. *See id.* at 481:18–19 ("I would actually like to put on the record that you have been incredibly biased toward the Plaintiff . . . when the Plaintiff's counsel introduced themselves this morning, you smiled and nodded."). The Court instructed her to address any such broader concerns on the docket in written briefing so that the Court could focus on the evidentiary issues at hand and proceed with the trial. *See id.* at 481:18–482:9.

Attorney Jeffery disobeyed this last order on at least two additional occasions by responding to the Court's trial-related evidentiary rulings with accusations of the Court's bias against Defendants. One of these instances occurred on the fifth day of trial during a sidebar concerning whether Defendants had opened the door to certain testimony on cross-examination. Attorney Jeffery responded to the Court's ruling by again arguing that the Court was "unfairly prejudicing the defense." *See* Ex. 4, 1/27/2023 Tr. Transcript at 1108:15–19. The Court responded by cautioning her: "I've instructed you before and I'm instructing you again that you can make those objections in writing. We're not going to take time at sidebar to address your concerns about the general prejudice of the Court." *Id.* at 1108:20–24. The second instance was triggered by the Court's ruling under Federal Rule of Evidence 403 that during closing arguments, the parties were not to refer to the fact that Plaintiff had utilized homophobic slurs. Ex. 5, 2/1/2023 Tr. Transcript at 1932:12–1933:21. Attorney Jeffery again responded to this ruling by accusing the Court of bias. *See id.* at 1933:24–1937:25 ("throughout this litigation, you have been an advocate for the Plaintiff the minute I've walked into the courtroom"). The Court again cautioned her about responding to the Court's rulings with uncontrolled and disrespectful accusations rather than legal argument about the substantive matter at issue. *See id.* 1935:16–18 ("You are able to make your record, but you're not able to do that in a way that is disrespectful and makes *ad hominem* attacks on the Court"; "If you have any other explanation for how this

could be relevant and probative . . . I will hear you.  You're going to limit your argument to that legal point . . . I've warned you about contempt").

### 2. Attorney Jeffery's Contemptuous Act in Front of the Jury

On February 2, 2023, the Court initiated summary criminal contempt proceedings against Attorney Jeffery for her willful violation of the Court's order not to refer to the fact that Plaintiff had used certain homophobic slurs in front of the jury.  The Court saw and heard the below acts that led up to and constituted the contemptuous act.

As mentioned above, on February 1, 2023, the Court found that the probative value of Plaintiff's use of certain homophobic slurs was substantially outweighed by unfair prejudice pursuant to Federal Rule of Evidence 403.  The very next day, on February 2, 2023, Attorney Jeffery violated this order during her closing argument.  First, Attorney Jeffery argued to the jury that Plaintiff "used an extremely derogatory term toward gay people during group, and that's in the record.  You've heard it."  *See* Ex. 6, 2/2/2023 Tr. Transcript 2087:22–24.  She then proceeded to display a document to the jury containing the account of Plaintiff using a homophobic slur.  *See* Trial Ex. 5.  In the copy shown to the jury, she had highlighted the sentence containing Plaintiff's use of the slur.  Attorney Jeffery then proceeded to read the sentence out loud to the jury, up to the slur itself.  *See* Ex. 6 at 2088:4–6.  When she got to the term "f_____," she pointed her finger at the term on the projector while telling the jury, "I won't repeat it."  *See id.* at 2088:6.  The Court then instructed Attorney Jeffery to take the document off of the screen and ordered a recess so that the Court could consider what processes were necessary to enforce Attorney Jeffery's compliance with the Court's orders for the remainder of trial.  *See id.* at 2088:7–13.

After the recess, the Court found that Attorney Jeffery had violated the Court's order instructing counsel not to refer to the fact that Plaintiff had used homophobic slurs.  *See id.* at 2090:7–2091:18.  The Court found that—although Attorney Jeffery did not say the slur outright—her acts of highlighting the slur, pointing to it, and verbally drawing the jury's attention to it were, together, a clear violation of the Court's order not to refer to the fact

that Plaintiff used homophobic slurs.  *See id.*  The Court afforded Attorney Jeffrey an opportunity to respond but did not find credible Attorney Jeffrey's explanation that she misunderstood the Court's order and "did not intend to focus on [the issue of homophobic slurs], but it's a very significant issue, because it goes to the impeachment . . . . "  *See id.* at 2091:19–2092:1.  Instead, the Court found that the "order not to refer to that fact was clear," and she had intentionally "violated that order [the] same as if [she] had actually said the word."  *See id.* at 2092:21–2093:2.

### 3. The Court's Finding That a Summary Criminal Contempt Proceeding Was Necessary

Based on the events above, the Court held Attorney Jeffery in contempt of Court and imposed a $4,000 penalty.  The Court did so via the summary criminal contempt procedure outlined in Federal Rule of Criminal Procedure 42(b) because, (1) it found the need to dispel an immediate threat to the court proceedings, and (2) the contempt was committed in the Court's presence before the conclusion of trial.  *See Glass*, 361 F.3d at 586.

Attorney Jeffery's conduct posed an immediate threat to the Court's ability to control the trial.  First, Attorney Jeffery intentionally violated an order not to highlight certain prejudicial information to the jury less than 24 hours after the Court had issued it.  *Pounders v. Watson*, 521 U.S. 982, 990–91 (1997) (summary contempt appropriate when lawyer violated court order by making comments to the jury that he had been admonished not to make).  She did so in the presence of the jury, endangering the fairness of the proceedings.  As the Court had explained to the parties, prevention of unfair prejudice to Plaintiff was the reason for the Court's ruling in the first place.

Moreover, Attorney Jeffery's repeated violations of Court orders throughout trial demonstrated that lesser measures, such as warnings, likely would not have been effective in enforcing compliance during the remainder of the trial.[1]  As recited above, Attorney

---

[1] The remainder of trial consisted of closing arguments and a possible punitive damages phase of the trial, which was bifurcated at the joint request of the parties.  *See* Dkt. 354.

Jeffery repeatedly violated the Court's orders at least 5 times in the course of a 9-day trial. She did so despite multiple explicit warnings from the Court that it viewed her conduct as contemptuous violations of Court orders. *See, e.g.*, Ex. 3 at 480:7–481:16; Ex. 5 at 1937:5.

In addition, Attorney Jeffery demonstrated a palpable contempt for the Court's authority, further indicating that she was unlikely to comply with its orders. For instance, during the attorney conference at which the Court discussed its Rule 403 ruling regarding homophobic slurs, Attorney Jeffery questioned the Court's inherent authority to control the trial proceedings in a mocking, derisive tone, stating, "what are you controlling, Your Honor, other than Defense's ability, again, to defend their clients." *See* Ex. 5 at 1934:22–24. She frequently spoke to the Court in an openly hostile, mocking, and sarcastic tone, further displaying her contempt for the Court's authority. *See, e.g.*, *id.* at 1937:13–14 ("Counsel, you're going to control your tone. That is very disrespectful."). These behaviors not only disrupted testimony, sidebar discussions, and the Court's ability to efficiently manage the trial, but also left the Court with no confidence that a further warning would be effective in controlling Attorney Jeffery's courtroom behavior. Based on the Court's first-hand perception of her misconduct throughout trial, it not only concluded that Attorney Jeffery's contemptuous conduct was intentional but also that immediate measures were necessary to protect the fairness of the remainder of the proceedings. Accordingly, to ensure compliance with the Court's orders for the remainder of trial, the Court held Attorney Jeffery in contempt via summary proceedings.

///
///
///
///
///
///
///
///

### III. CONCLUSION AND ORDER

The above recites the facts relevant to the contempt finding and certifies that the undersigned saw and heard the contemptuous conduct in accordance with Rule 42(b). Attorney Jeffery will submit her $4,000 sanction payment by March 31, 2023. The check shall be made payable to "John Morrill, Clerk of Court" and mailed to the following address:

John Morrill, Clerk of the Court
United States District Court
Southern District of California
333 West Broadway, Suite 420
San Diego, CA 92101

**IT IS SO ORDERED.**

Dated: February 7, 2023

_____
Hon. Jinsook Ohta
United States District Court